STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7368
    Fax: (415) 436-6405
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:22-mj-70983 |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | Date: September 30, 2022 |
| ABRAHAM CRUZ-ARTEAGA, | Time: 10:30 a.m. |
| Defendant. | Court: Hon. Joseph C. Spero |

UNITED STATES' DETENTION MEMORANDUM    1
3:22-mj-70983

## I.    INTRODUCTION

On July 28, 2022, Magistrate Judge Alex G. Tse authorized the issuance of a Complaint (*see* Dkt. 1) and arrest warrant for Abraham Cruz-Arteaga (Defendant).  The Complaint charged Defendant with (i) one count of Conspiracy to Distribute Fentanyl in violation of 21 U.S.C. §§§ 846, 841(a)(1) and (b)(1)(C) and (ii) one count of Unlawful Use of a Communications Facility in violation of 21 U.S.C. § 943(b).  The Complaint stemmed from the defendant's involvement with multiple other similarly charged individuals in the distribution of illegal drugs in May, June and July of 2022.  On numerous occasions, Defendant was captured on a federal wire discussing the sale and distribution of narcotics in the Bay Area.

Defendant is one of seven separate individuals currently charged as a result of a wire-tap investigation that was initiated by the Drug Enforcement Agency in February of 2022.  The investigation targeted drug dealers operating in the Tenderloin District of San Francisco.  Three of the seven defendants were arrested in June of 2022.[1]  The other four defendants, including Mr. Cruz-Arteaga, were arrested at the end of July, 2022.[2]  All seven defendants have matters pending in Magistrate Court.  All seven defendants remain detained pending the outcome of their cases.

On July 29, 2022, Defendant made his initial appearance in Magistrate Court before the Honorable Alex G. Tse.  *See* Dkt. 2.  The matter was put over to August 17, 2022 for a detention hearing.  *See* Dkt. 4.  On August 16, 2022, Pretrial Services filed a Pretrial Bail Report recommending Defendant remain detained because of a risk of non-appearance.  *See* Dkt. 6.  A detention hearing was subsequently not held and the matter was put over for a preliminary examination.  *See* Dkt. 8.

Defendant has now requested the Court hold a detention hearing in light of him finding a potential surety.  As a result of that request, Pretrial Services interviewed Defendant's proposed third-party custodian.  Despite Defendant's proposal, Pretrial Services continues to recommend Defendant be

---

[1] The first three charged cases include: United States v. Maycol Reyes-Aleman (Case No. 3:22-mj-70740-2); United States v. Bayron Flores (Case No. 3:22-mj-70740-1); United States v. Hever Suarez (Case No. 3:22-mj-70760).

[2] The second four charged cases include: United States v. Abraham Cruz-Arteaga (Case No. 3:22-mj-70983); United States v. Angel David Rodriguez (Case No. 3:22-mj-70982); United States v. Edin Ismael Rodriguez-Cartagena (Case No. 3:22-mj-70970); United States v. Darwin Mancia Murillo (Case No. 3:33-mj-70975).

detained as a risk of non-appearance. *See* Dkt. 15.

Similarly, the government continues to oppose Defendant's release because he is both a flight risk and a danger to the community. In what follows, the government discusses the extent of the defendant's conduct in this case and his criminal history. What should be most disturbing to this Court when determining detention is Defendant's willingness to continue to deal lethal narcotics despite being prosecuted for similar conduct dating back all the way to 2009. For those reasons, to safeguard his appearance in court and to ensure the safety of the community, the government respectfully requests that Defendant be detained pending trial.

## II.      FACTUAL BACKGROUND

### A.      A Federal Wiretap Investigation Reveals Defendant's Involvement in the Distribution and Sale of Fentanyl.

In February of 2022, during the course of an investigation targeting drug dealers operating in the Tenderloin District in San Francisco, the Drug Enforcement Agency (DEA) obtained two wiretaps targeting multiple telephones. The first wiretap, authorized by the Honorable Vince Chhabria and operational in February and March of 2022, targeted a phone operated by Hever Suarez, a charged defendant in related case number 3:22-mj-70760. The second wiretap, authorized by the Honorable Edward J. Davila, and operational in May and June of 2022, targeted a phone operated by Darwin Mancia-Murillo, a charged defendant in related case number 3:22-mj-70975. These wiretaps very clearly established that all seven of the defendants mentioned above were actively involved in the distribution of narcotics throughout the early months of 2022.

In fact, the wiretaps established that Defendant was extensively involved in the packaging and sales of drugs in conjunction with others. On May 12, 2022, for example, the wiretap caught Mancia-Murillo calling Defendant and discussing the packaging and sales of drugs, most likely fentanyl. A summary of the wire intercept follows:

> *MANCIA asked ABRAHAM if the guy (third party) liked the "blue" (possibly narcotics). ABRAHAM said it (blue, possibly narcotics) was fire and asked MANCIA if he (MANCIA) had not seen the video (reference to call # 71). MANCIA asked ABRAHAM why that "animal" (possibly narcotics) was so... [thought was not finished by MANCIA] ABRAHAM asked for clarification.*

*MANCIA said he (MANCIA) bet the "animal" (possibly narcotics) that was like [U/I] would burn more black than that one (possibly blue one). ABRAHAM said that these (possibly narcotics) were "horses" [U/I].*

In this call, Defendant initially refers to a specific drug as "fire" which, according to the DEA, means the drug is of high quality. They then discuss the "animal" burning more black than blue which, again, is a reference to drugs and the color of their burn when used.

Later in the call, the wire catches Mancia and Defendant discussing packaging the drug in bags.

*MANCIA said he (MANCIA) had told David that that "animal" should be put in bags tomorrow, so that it could come out even, exactly [U/I]. ABRAHAM said they (ABRAHAM and MANCIA) should (put) it (possibly narcotics) in bags. MANCIA said yes, he (David) was going to make/put it (possibly narcotics) in bags. ABRAHAM said [U/I] once he (ABRAHAM) made it (possibly narcotics).*

As the line sheet makes clear, Mancia even explains that the guys (potentially referring to the workers, including Angel David Rodriguez (aka David), a defendant charged in related case number 3:22-mj-70982) could put the drugs in bags.

Finally, at the end of the call, Defendant called potential buyers of the drugs "dumb" because they wanted their drugs to be white and burn black.

*ABRAHAM said he (ABRAHAM) was going to tell... [thought was not finished by ABRAHAM] ABRAHAM said [U/I] and that he (ABRAHAM) was going to make [U/I]. MANCIA said the one (possibly narcotics) the already had was more black. ABRAHAM said they (possibly customers) were dumb because they (customers) wanted it (possibly narcotics) to be white and burn black. MANCIA said okay.*

According to the DEA, fentanyl comes in various colors, and can burn a particular color. Based on their discussion of packaging, drug color and burn color, Defendant and Mancia were most certainly discussing the distribution and sale of fentanyl in this particular phone call.

On May 18, Defendant and Mancia were again caught on the wire, this time discussing the Defendant acquiring methamphetamine. Defendant agreed to bring "3" (possibly a reference to $3,000) for a certain amount of methamphetamine. Later that day, in a separate phone call to Defendant, Mancia confirmed he had the product and wanted to know if Defendant was coming. Defendant said he would arrive shortly.

UNITED STATES' DETENTION MEMORANDUM     4
3:22-mj-70983

Through the course of the wire on Mancia-Murillo's phone, DEA captured numerous conversations discussing the packaging, transportation and sale of narcotics, specifically fentanyl. Mancia-Murillo was even intercepted on the wiretap on May 20, 2022, making arrangements to meet one of his co-conspirators at "the park on Nicol" to deliver what appears to be a half kilogram of "clean" or pure fentanyl. In a call with Defendant later in the evening on May 20, 2022, in response to Defendant asking where he was, Mancia-Murillo said he was at the park on Nicol, confirming he went through with the delivery. There is no question these defendants engaged in the distribution and sales of large quantities of fentanyl. And, as one can see from the above listed wire intercepts, Defendant was integral to this operation.

**B.      A Search of Two Apartments in Oakland Further Establishes the Extent of Defendant's Involvement in the Conspiracy to Distribute Fentanyl.**

On July 27, 2022, DEA agents executed a search warrant at 3245 Prentiss Street, Apartment 2, in Oakland, California. That residence was identified as a home where both Mancia-Murillo and Defendant stayed. Inside a bedroom that was identified by Defendant as his own, the DEA recovered 31.9 grams of suspected cocaine in three clear plastic bags, one Iver Johnson revolver, one Axon X2 Taser, shotgun ammunition and rifle ammunition. Defendant admitted that the revolver belonged to him. Inside that same bedroom, agents also a set of keys that Defendant also admitted belonged to him. Those keys were later used by the DEA to open the door to 259 MacArthur Blvd., Apt. 301 in Oakland.

During the wire-tap investigation, 259 MacArthur Blvd, Apartment 301, was identified as a possible narcotics stash house for Mancia-Murillo, Defendant and others. On May 17, 2022, the wire caught Mancia-Murillo discussing the MacArthur location with Defendant. Defendant began the call by talking about how another involved person had been caught or arrested. Defendant said he told this person to leave. Defendant explained that if the police were after this individual, they were probably after Defendant and Mancia-Murillo as well. In response, Mancia-Murillo asked Defendant if he thought MacArthur was "hot," likely asking whether law enforcement had caught onto that location. Defendant said it was "not hot" over there because the guy who had been arrested did not live at the location on MacArthur. DEA later conducted surveillance at the MacArthur location and observed

Mancia-Murillo and Angel David Rodriguez coming and going with a large green duffle bag.

During the search of the 259 MacArthur Blvd. apartment on July 27, 2022, agents found all the signs of Mancia-Murillo and Defendant's drug trafficking operation described in the wiretaps.  First, a rifle was recovered inside the living room of the apartment.  The DEA recovered the rifle on top of a table inside a black nylon gym bag.  A 9mm magazine, with no ammunition, was inserted in the rifle.  Agents also found approximately 6–7-kilogram bricks of white fentanyl inside the apartment, two-kilogram presses commonly used to press drugs into brick form, numerous ounce-sized bags containing colored fentanyl, mannitol (which is known as a cutting agent for fentanyl) and dye used to add color to narcotics.  Very clearly, this apartment was being used as a stash house by Defendant and others to support their large-scale distribution of fentanyl.

During the course of the executions of the search warrants on July 27, 2022, Defendant was arrested on the Criminal Complaint and attendant arrest warrant.

### III.    LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature

and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV.   ARGUMENT

Defendant should be detained pretrial.  First, in what follows, the United States will establish why Defendant is a danger to the community.  As evidenced by his criminal history (*see* Dkt. 6), Defendant has been dealing drugs since as far back as 2009 when he was arrested and convicted of felony distribution of cocaine in Salt Lake City, Utah.  And in this case, he has been identified as someone who deals fentanyl, a highly lethal drug.

Additionally, this memorandum establishes, by a preponderance, that Defendant is a risk of flight whose appearance cannot be reasonably assured by any conditions.[3]  Mr. Cruz-Arteaga has been deported on at least one prior occasion, has a 2012 illegal reentry conviction and has minimal ties to the community.

### A.   The Defendant Is a Danger to the Community

1.   Nature and Circumstances of the Offense Demonstrate the Defendant Is a Danger

As the wire intercepts and search of the apartment on MacArthur makes clear, Defendant deals fentanyl, which is especially lethal.  In fact, just two milligrams of fentanyl,[4] depicted in the following picture, is lethal in most people:

//

//

---

[3] Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Id.*

Additionally, in this case there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community because the Court has already found that there is probable cause to believe that the defendant committed an offense for which the maximum term of imprisonment in the Controlled Substances Act is ten years' imprisonment or more.  *See* 18 U.S.C. § 3142(e)(3)(A).

[4] *See* https://www.dea.gov/sites/default/files/2021-12/DEA-OPCK_FactSheet_December%202021.pdf, last visited June 7, 2022 (December 2021 publication stating that 2 mg of fentanyl is considered a deadly dose and that 4 out of 10 pills DEA tests contain a potentially lethal dose).

**Fentanyl**



*See* https://www.dea.gov/galleries/drug-images/fentanyl, last visited June 7, 2022

Notably, on July 27, 2022, keys that Defendant identified as his own were used by law enforcement to open and enter an identified stash house in Oakland where between six and seven kilograms of fentanyl were recovered. In addition to the drugs, packaging materials, cutting agents, dye and firearms were found inside that same stash house. And, Defendant admitted to possessing a revolver found at the home on Prentiss at the time of his arrest in July. These discoveries verify Defendant's role as a fentanyl dealer and support the conversations overheard on the wire-intercepts.

Because Defendant is a drug dealer, he poses a serious danger to the community. In fact, as one court has explained, the risk of continued drug trafficking in particular is a danger to the community:

> In its report accompanying the Comprehensive Crime Control Act of 1984, Senate Report No. 98-225, reprinted in 1984 U.S. Code Cong. & Ad. News, pp. 3182, et seq., the Senate Committee on the Judiciary explained at length the concept of pretrial detention as provided under § 3142(e). The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community "refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *Id*. at 3195. The Committee also emphasized that "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" (Footnote omitted.) *Id*. at 3196. *See also United States v. Strong*, 775 F.2d 504, 506-07 (3d Cir. 1985) (Congress equated drug trafficking with danger to community).

*United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989); *see also United States v. Wolf,* No. CR 15-263-EJD, 2015 WL 4573039 (N.D. Cal. Jul. 29, 2015) ("Because this evidence demonstrated

Defendant's continuing involvement with the distribution of drugs, the danger to the community he posed if released was established by clear and convincing evidence").

Defendant's own criminal history suggests he will continue to engage in drug dealing and trafficking, even if released.  In fact, he has been prosecuted for narcotics related activity as far back as 2009, yet continues to engage in this illegal conduct.  Because there is a demonstrated risk that Defendant will continue to engage in drug trafficking, this alone indicates he is a danger to the safety of any other person or the community.

### 2. The Weight of the Evidence Against the Defendant is Overwhelming

There is overwhelming evidence in support of the two-count complaint.  Both the wire intercepts, as well as the search of the apartments on Prentiss Avenue and MacArthur Avenue in Oakland demonstrate that Defendant was actively involved with Mancia-Murillo and others in the packaging and sales of fentanyl.  Defendant was caught on multiple phone calls discussing drugs, customers and packaging.  At the time of his arrest, keys found on Defendant were used to open the door to the stash house on MacArthur where close to seven kilograms of fentanyl were uncovered.  Very clearly, there is strong evidence supporting Defendant's involvement in the conspiracy and his unlawful use of a communications device to promote this conspiracy.  Even more, because of the large quantity of drugs found in the apartment on MacArthur, Defendant is potentially facing a large prison sentence should he be convicted.  As a result, this factor should weigh in factor of keeping Defendant detained pending trial on this matter.

### 3. The Defendant's History and Characteristics Reveal His Dangerousness

Finally, Defendant has an extensive criminal history including numerous arrests for drug sales.  As far back as 2009, Defendant was arrested and convicted in Salt Lake City for selling cocaine.  *See* Dkt. 6.  Even more, he has been arrested in San Francisco multiple times in just the past five years for drug sales conduct.  His 2017 arrest and prosecution appears to have been sent to diversion, offering Defendant a valuable opportunity to avoid a conviction and stop his drug sales activities.  Nevertheless, just five years later, Defendant has been caught on a wiretap involved in a large conspiracy to deal a lethal narcotic in the San Francisco Bay Area.  The nature of Defendant's criminal history suggests the only way to safeguard the community is to detain Defendant pending trial.

**B.      The Defendant Presents a Significant Flight Risk**

Throughout his criminal history, Defendant has demonstrated a clear willingness to evade judicially imposed orders.  Despite being removed from the United States in 2009, Defendant returned to the United States and was yet again prosecuted for illegal re-entry.  In San Francisco, in 2017, Defendant was arrested for transporting or selling a controlled substance and had his case sent to diversion.  Despite such a favorable disposition, just five years later, Defendant is now involved in a coordinated effort to package and distribute fentanyl in the San Francisco Bay Area.  Very clearly, Defendant does not take judicial intervention seriously.

Even more, Defendant is in the United States illegally and has an outstanding Warrant of Removal pending.  In his Pre Bail interview, Defendant admitted to having significant family ties to Honduras, including at least three children who still reside there.  *See* Dkt. 6.  Defendant 's criminal history further reveals that he has used a total of 12 aliases and variations of his own name, and six alternate dates of birth.

Additionally, during a May 17, 2022 phone call with Mancia-Murillo that was intercepted on the wire, Defendant discussed a third-party being followed by law enforcement.  Defendant said he told this third-party to leave.  This comment is highly indicative of Defendant's state of mind as it pertains to his willingness to remain in the jurisdiction and be held accountable for his own conduct.

At a minimum, Defendant's history shows that he cannot be trusted to obey court orders.  But in consideration of all the circumstances—including the strong evidence against him, the potentially significant sentence he faces if convicted, and his demonstrated failure to comply with prior judicial intervention—there is a substantial risk that the defendant will refuse to abide by any court-ordered conditions of release and flee.

//

//

//

## V.   CONCLUSION

There are no set of conditions that will reasonably assure the appearance of Defendant at court proceedings or ensure the safety of the community. The Court should order Defendant detained pending trial.

DATED: September 29, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney


 /s/ Charles F. Bisesto
CHARLES F. BISESTO
Assistant United States Attorney

UNITED STATES' DETENTION MEMORANDUM    11
3:22-mj-70983